IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MACK MANDRELL LOYDE #479167, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-cv-00758 |
| TONY WILKES, et al., | ) Judge Trauger |
| Defendants. | ) |

## MEMORANDUM

Plaintiff Mack Mandrell Loyde, an inmate who was until recently in the custody of the Davidson County Sheriff, has filed a *pro se* complaint against several members of the jail staff for alleged violations of his civil rights under 42 U.S.C. § 1983. The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1916(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. Standard of Review

Under the PLRA, the court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on

initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## II.     Factual Allegations

The plaintiff alleges that he has an extensive history of mental health problems and has spent some time on suicide watch in jail. (ECF No. 1, at 7–8.) He alleges that, after his release from suicide watch, he again became extremely depressed and suicidal and submitted multiple sick call forms and requests that his psychiatric medications be re-prescribed. (*Id.*) The plaintiff alleges that the mental health program manager, Defendant VarDell, denied all of his requests, apparently without seeing him. (ECF No. 1, at 8.) He alleges that he tried to seek help from the jail administrator, Defendant Bodie, who replied that the plaintiff would not be "the first or last" to kill himself and walked away. (*Id.*) Days later, the plaintiff attempted suicide and was finally seen by medical and placed back on suicide watch. (*Id.*) He asked for psychiatric medication and to see a psychologist, but Defendant VarDell again refused all of his requests. (ECF No. 1, at 8–9.)

The plaintiff alleges that, on March 11, 2016, he and a fellow inmate were accused of engaging in homosexual activity because they had a sheet hanging from the top bunk in the cell

they were in. (ECF No. 1, at 4.) Although the accusation was investigated and found to be unfounded, with no evidence to establish "any type of sexual activity," the classification manager, Defendant Gentry, still listed plaintiff and his friend as "incompatible" inmates to be kept separated. (ECF No. 1, at 4–5.) When the plaintiff complained that other inmates who had hung sheets, clothes and towels from their bunks did not receive the same treatment, Defendant Gentry told him "I don't have to explain my actions or reasons because no known homosexual is going to hang around you for free, I know how slick and sneaky they can be, which is why I'm going to separate you both before anything happens," (ECF No. 1, at 5–6), and to "just stay away from those type of people and you'll be fine." (ECF No. 1, at 6.) She also threatened him that, "if you don't stop crying and complaining then I'll move your ass to the 'hole' on the 5th floor . . . where your enemies are." (*Id.*)

The plaintiff alleges that he complained about the situation to Defendant Bodie, who also threatened him that if he "pursued this complaint," he would either be "moved to the 'hole' on the 5th floor" or that his "little friend," referring to the fellow inmate, "would find himself moved into a pod filled with wolves." (ECF No. 1, at 7.)

Plaintiff alleges that after that incident, Defendants De Moss, Kidd, Conrad, Farley, Rickman and Pallak began "targeting" and "sexually harassing" him. (ECF No. 1, at 9.) Specifically, the plaintiff alleges that he is subjected to unnecessary restrictions, including a water restriction, and that the defendants refuse to deliver him drinking water if he complains of mistreatment. (ECF No. 1, at 9-10.) Defendant Farley has also suggested that the plaintiff cannot truly be a Muslim because he is friends with a homosexual, and went on to say "that isn't normal and until you choose a side, you ain't getting nothing from me." (ECF No. 1, at 14–15.)

The plaintiff further alleges that defendants Bodie and Johnson assigned him to be housed in the suicide watch area permanently, ostensibly due to his behavior (including the alleged destruction of a sprinkler head) and alleged high security risk, although inmates with worse behavior have received better treatment. (ECF No. 1, at 10–11, 16.)

The "normal response" of Defendants Kidd, Farley, Bodie and Johnson to his complaints about his conditions is to threaten to move him to the 5th floor with his "enemies." (ECF No. 1, at 16–17.) When he complains about not getting his religious diet, Defendants Farley and Kidd threaten to move him "behind the cage." (ECF No. 1, at 17.)

Much of the plaintiff's complaint relates to the conditions of his confinement since being placed on permanent suicide watch in a cell that he describes as a "real health hazard." (ECF No. 1, at 11.) The plaintiff alleges that the walls, floor and vents are all smeared with feces and urine, that there is mold in the walls, and that it has no running water for drinking, bathing or brushing his teeth. (*Id.*) The plaintiff alleges that he made Defendants Bodie and Johnson aware of the condition of the cell, but that Bodie told him he "would have to deal with" the situation. (*Id.*) Bodie has imposed property restrictions on him that prevent him from having hygiene supplies, typical clothing, or a mattress. Because the plaintiff does not have a table or stool in his cell, he is "forced to lay all of [his] clothes, legal documents, on the feces and urine smeared floor by the toilet." (ECF No. 1, at 16.) Plaintiff alleges that Bodie has responded to his complaints about conditions by threatening to move him to the 5th floor or "behind the cage." (*Id.*) At the time of drafting his complaint, the plaintiff alleges that he had not been permitted to shower in 16 days and had developed a rash. (ECF No. 1, at 11, 13, 14.)

The plaintiff alleges that he was "kept on lockdown well over 5 days." (ECF No. 1, at 11.) He alleges that the lights in the cell are on 24 hours a day, hurting his eyes and preventing him from sleeping, but that Defendants Bodie and Johnson told him just to put a cover over his head. (ECF No. 1, at 12.)

According to the plaintiff, he has been denied a form to submit a grievance, and Defendant Bodie has instructed all jail staff, including medical and mental health staff, to have no communication whatsoever with the plaintiff, and to prevent any communication between him and any other inmates. (ECF No. 1, at 11–12.) His recreation is limited to time alone on the roof, on instruction from Defendants Bodie and Johnson, and he is denied access to any

vocational or educational classes. (ECF No. 1, at 17, 18.)

The plaintiff alleges that, "under guidance of and with full authorization from" Defendants Wilkes (chief of corrections), Bodie, Johnson and Gentry, he is being treated like "lesser than a human being and worse than an animal." (ECF No. 1, at 16.) The plaintiff alleges that he has gone on hunger strikes to protest his mistreatment. (*Id.*)

The plaintiff alleges that his Islamic faith requires him to wash himself in connection with his five daily prayers, which he is prevented from doing. (ECF No. 1, at 14.) He says that he has discussed this issue with Defendants Gearl/Earl, Bodie, Johnson, Gentry, DeMoss, Conrad, Kidd and Farley, to no avail. (*Id.*) As mentioned above, Defendant Farley questioned the sincerity of the plaintiff's religious faith in light of his friendship with "a known homosexual." (ECF No. 1, at 14–15.) The plaintiff informed Defendants Gearl/Earl, Bodie, Johnson, Gentry, Kidd and Farley about his desire to attend Islamic services, but "was brushed off." (ECF No. 1, at 14.)

Plaintiff alleges that Defendant Gearl/Earl, "the supposed chaplain (program manager)," has informed him that the jail does not provide any Islamic services or recognize Ramadan, although it does recognize Christian and Jewish holy days. (ECF No. 1, at 15.) Defendant Farley has ordered that the plaintiff not be permitted his religious diet, on instructions from Defendants Bodie and Johnson. (ECF No. 1, at 17, 18.) The plaintiff alleges generally that he is "denied the right to practice [his] Islamic faith." (ECF No. 1, at 18.)

The plaintiff alleges that Defendants Bodie and Johnson are causing all of his legal mail to be opened and read, as well as his regular mail to be opened, read and destroyed or withheld. (ECF No. 1, at 15.) He further alleges that he is being denied access to the law library and to legal materials and supplies. (*Id.*)

The plaintiff alleges that he is "denied the right . . . to speak about [his] political beliefs," (ECF No. 1, at 18), and as noted above, he alleges that he has been denied a grievance form.

The plaintiff alleges that, while he was unconscious from his suicide attempt, the chief of security, Defendant Johnson, sprayed him with chemical agents. (ECF No. 1, at 8.) He also

vaguely alleges a separate incident in which "certain officers" used unnecessary force against him, (ECF No. 1, at 7), and that "it is a well known fact" that guards administer "physical therapy sessions" in a particular shower to inmates with behavioral problems. (ECF No. 1, at 14.)

## III. Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

The plaintiff complains about the denial of mental health care. Whether the plaintiff is a convicted inmate, whose claims would be analyzed under the Eighth Amendment, or a pretrial detainee, whose claims would be analyzed under the Fourteenth Amendment, the standard for adequate medical care is the same: to state a claim for relief under § 1983, the plaintiff must allege that the defendant was deliberately indifferent to his serious medical needs, meaning that the defendant knew of and disregarded a substantial risk of serious harm to the plaintiff's health. *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) and *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994)). The plaintiff alleges that Defendants Bodie and VarDell denied him access to any treatment when he was suicidal and requesting treatment, and continued to deny him medication or psychological services even while he was on suicide watch following a suicide attempt. These allegations are sufficient to state a claim for deliberate indifference to the plaintiff's serious medical needs.

The Equal Protection Clause prohibits discrimination by government actors that burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others

similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Sexual orientation has not been identified as a suspect classification in the Sixth Circuit, but it does constitute an "identifiable group" for equal protection purposes. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012). The plaintiff's claims that he has been subjected to selective enforcement of jail rules, additional restrictions and worse conditions than other inmates on the basis of his suspected homosexual relationship[1] state a sufficiently colorable claim to survive initial review. *See Kohn v. Myron*, No. 2:14-CV-137, 2015 WL 93726, at *7 (W.D. Mich. Jan. 7, 2015) (finding that claims that a plaintiff "was placed in a cell near the front of the unit where he could be observed by officers because he was gay, [and] was not allowed to pick his own cell mate unlike heterosexual prisoners" were not clearly frivolous).

The complaint does not, however, state a claim for retaliation. An inmate states a claim for retaliation when he establishes that: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff's allegations indicate that several defendants have threatened him with adverse action if he continues his verbal complaints to them. Even assuming that the threatened action was sufficiently severe to meet the threshold, the plaintiff's verbal complaints to jail staff are not protected activity for the purpose of this analysis. *Anderson v. Sundquist*, 1 F. Supp. 2d 828, 833 (W.D. Tenn. 1998) ("There is no First Amendment right to

---

[1] It appears that, whether the plaintiff is actually homosexual is not critical to this analysis. The alleged comments by Defendant Gentry (whose allegedly unwarranted restrictions on the plaintiff began the chain of events comprising his complaint) and Defendant Farley suggest that the plaintiff was suspected to be homosexual. When examining a government actor's actions under § 1983, it is "the [defendant's] motive, and in particular the facts as the [defendant] reasonably understood them, that matter[s]." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016) (holding that city officials violated the First Amendment by demoting a police officer because they incorrectly believed that he had engaged in protected activity).

complain to prison officials, . . .. It follows that retaliation for voicing complaints . . . verbally and informally . . ., does not implicate First Amendment rights." (internal citations omitted)); *Mack v. Yost*, 979 F. Supp. 2d 639, 648 (W.D. Pa. 2013) ("An oral complaint to a prison guard is not a petitioning for the redress of grievances guaranteed by the First and Fourteenth Amendments.")

Likewise, the plaintiff does not state a claim under § 1983 with regard to his being denied a grievance form or having his grievances denied by any of the defendants. Although inmates retain a general right to petition the government for redress of grievances, *Turner v. Safley*, 482 U.S. 78, 84 (1987), they do not have an inherent constitutional right to any particular state-created grievance procedure or even to an effective grievance procedure. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (affirming dismissal of claim that jail staff ignored grievances because inmate "cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure"). Moreover, an alleged failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability on any underlying claim. *See George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation....").

The court has analyzed the plaintiff's allegations about the conditions to which he is subjected in his segregated confinement in terms of both due process and cruel and unusual punishment, and finds that he states a claim under either standard sufficient to survive initial review, regardless of whether he is a pretrial detainee or a convicted inmate. The alleged conditions include the punitive deprivation of drinking water, a deplorably unsanitary environment, exacerbated by the denial of cleaning/hygiene supplies or running water, and the prolonged inability to shower, and have caused the plaintiff to develop a rash. Those conditions arguably surpass the level of mere discomfort and state a nonfrivolous claim for deprivation "of the minimal civilized measure of life's necessities," as required to state a claim for cruel and

unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Segregating the plaintiff to those conditions therefore necessarily constitutes the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Because those standards applicable to the claims of convicted inmates are at least as high if not higher than the standards applicable to those of pretrial detainees,[2] the plaintiff's allegations are sufficient regardless of his status.

The plaintiff alleges that the jail does not provide Islamic services or observe Ramadan, while Christian and Jewish holy days are observed, and further that he is being deprived of his religious diet and of the water he needs to perform his prayers. Those allegations state a colorable claim for violation of the plaintiff's rights under the First and Fourteenth Amendments and/or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.

The plaintiff's complaints about being denied access to a law library and legal materials do not state a claim. "Although prisoners have a constitutional right of meaningful access to the courts, a prisoner must demonstrate actual prejudice to pending or contemplated litigation to state a claim." *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002); *see also Lewis v. Casey*, 518 U.S. 343, 349, 353, 355 (1996) (inmate claiming denial of access to court must allege "actual injury" to a "nonfrivolous legal claim" in connection with an attack on his criminal sentence or challenge to conditions of confinement). This means that a plaintiff "must plead and prove prejudice stemming from the asserted violation, [such as] the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). This requirement applies equally to claims about jail staff reading legal

---

[2] If the plaintiff is a pretrial detainee rather than a convicted inmate, his cruel and unusual punishment claims would arise, not from the Eighth Amendment, but from the due process protections of the Fourteenth Amendment, which "operates to guarantee those same protections." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). His due process claim would include any condition amounting to "punishment," meaning that it is "arbitrary or purposeless" or not otherwise reasonably related to a "legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 535, 538, 539 (1979). The court cannot imagine any purpose, other than punishment, served by prolonged exposure to the environment described by the plaintiff.

mail. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). The plaintiff has not alleged any such injury in this case, and his ability to submit the current complaint (replete with legal citations) and seven subsequent filings (see ECF Nos. 2, 6–11) indicates that his right to access the court has not been violated.

To the extent that the plaintiff claims that any mail – regular or legal – is being destroyed or withheld, however, he states a colorable claim for violation of his rights under the First Amendment. Inmates retain their right to communicate through the mail, subject to institutional regulations that are "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). Whether the alleged interference with the plaintiff's mail is attributable to such a regulation must be determined by further proceedings.

Finally, the alleged use of chemical agents on an unconscious inmate states a claim for excessive force under either the Eighth or Fourteenth Amendment. However, the separate alleged use of unnecessary force by "certain officers" does not identify any of the defendants as participating in that event and therefore fails to state a claim against any of them. Nor does the plaintiff's implication that other inmates have been abused in the shower by unidentified guards state a claim for violation of his personal constitutional rights.

From the court's initial review of the complaint, it appears that the factual allegations found to state the various claims discussed above implicate (to varying extent) every individual named as a defendant except for Defendant Wilkes. The only factual allegations against Wilkes are: (1) he construed the original report of the plaintiff's suspected activity to be one involving consensual sexual behavior (ECF No. 1, at 5); (2) he ruled on the plaintiff's grievance appeals (ECF No. 1, at 6); and (3) he has provided "guidance" and "full authorization" for treatment of the plaintiff as less than human (ECF No. 1, at 16). The first allegation does not suggest any violation of the plaintiff's constitutional rights. As noted above, ruling on a grievance does not establish sufficient personal involvement for liability for any constitutional violation. And the final allegation against Wilkes is simply too vague to state a claim against him. Accordingly, the

plaintiff's claim against Wilkes will be dismissed without prejudice to the plaintiff's ability to amend his complaint in order to allege his personal involvement in any violation(s).

## V. CONCLUSION

For the reasons set forth herein, the court will dismiss the plaintiff's claim against Defendant Wilkes without prejudice, but finds that the complaint states colorable claims against the remaining defendants. An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge